```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
LaSALLE BANK NATIONAL ASSOCIATION,                         :
TRUSTEE FOR CERTIFICATE HOLDERS OF                         :
CAPCO AMERICAN SECURITIZATION                              :
CORPORATION, COMMERCIAL MORTGAGE                           :
PASS THROUGH CERTIFICATES SERIES                           :
1998-D7 BY AND THROUGH LENNAR                              :
PARTNERS INC. AS SPECIAL SERVICER,                         :
                         Plaintiff,                        :
                                                           :
                                                           :
             -against-                  :    **OPINION**
                                                           :
                                                           :    02 CV. 9916 (RLC)
                                                           :
CAPCO AMERICAN SECURITIZATION                              :
CORPORATION, and THE CAPITAL                               :
COMPANY OF AMERICA LLC                                     :
                         Defendants.                       :
                                                           :
-----------------------------------------------------------X
```

APPEARANCES

PATRICK C. SCHMITTER
NATHANIEL P. T. READ
AKIN GUMP STRAUSS HAUER & FELD LLP
Attorneys for Plaintiff
590 Madison Avenue, 19th Floor
New York, New York 10022

        R. LAURENCE MACON
            Of Counsel

RAYMOND L. VANDENBERG
VANDENBERG & FELIU, LLP
Attorney for Defendants
110 East 42nd Street
New York, New York 10017

        MICHAEL S. GRUEN
        STEVEN S. DIEBERT
            Of Counsel

ROBERT L. CARTER, District Judge

Two motions are to be resolved. First, LaSalle Bank National Association ("LaSalle")[1] moves for summary judgment on its claim of breach of warranty. Second, CAPCO American Securitization Corporation (and its associated business entity the Capital Company of America, LLC (collectively, "Capco"))[2] cross-move for summary judgment dismissing LaSalle's claim of breach. Capco has also requested leave to amend their answer, in the event that the court finds that two of their affirmative defenses to LaSalle's claim were unplead.

INTRODUCTION

With certain exceptions, the parties agree on the facts. What is in dispute is the meaning of several provisions in a contract.

LaSalle agreed to purchase from Capco approximately $1.2-billion worth of mortgage loans, which were to be included in a Real Estate Mortgage Investment Conduit ("REMIC") Trust.[3] Compl. ¶ 1. On September 11, 1998, LaSalle, as trustee and administrator, (the "trustee") and Capco, as the mortgage loan seller (the "seller") (and several non party entities) executed a Pooling and Services Agreement ("PSA.")[4] The PSA bundled the purchased mortgage loans into one trust. One such mortgage transferred to the trust is central to this case. A mortgage dated June 16, 1998, in the initial amount of $3,303,000 (the "mortgage"), was held by Capco on a healthcare facility operated by Home and Living Centers, Inc. (the "borrower.") Id. ¶ 15.

---

[1] LaSalle is represented in this action by the special servicer for the certificate holders in the trust.
[2] Defendant Capco American Securitization Corporation is now known as Nomura Asset Capital Corporation.
[3] "A REMIC trust represents a pool of mortgages, the beneficial ownership of which have been sold to various investors in the form of certificates representing their undivided ownership interest in the total pool. If the REMIC trust has complied with certain IRS regulations, then income received by the trust, in the form of payments made on the various mortgage loans, is passed through to the various certificate holders, without being subject to federal income tax." LaSalle Bank National Ass'n v. Nomura Asset Capital Corp., 180 F.Supp.2d 465, 467 (S.D.N.Y. 2001) (Buchwald, J.)
[4] Lennar Partners, Inc., who brings this action on behalf of LaSalle (the party in interest) was also a party to the agreement, becoming the special servicer of the mortgage trust, and remains so.

In the PSA, Capco warranted that it would provide "Uniform Commercial Code financing statements on all furniture, fixtures, equipment and . . . <u>all other personal property</u> to be used in the operation of the . . . [borrower's] healthcare facility. Id. ¶ 4 (quoting PSA § 2.03(b)(xlii)) (emphasis added).[5] The controversy in this case relates to the alleged deficiencies of this filing.

Nearly four years after purchasing the mortgage, LaSalle learned that Capco's U.C.C. filing (the "filing") did not give them a security interest in the borrower's personal property.

On March 8, 2002, the borrower filed a petition for voluntary bankruptcy under Chapter 11 of the U.S. Bankruptcy Code. <u>See</u> Pet., <u>In Re Health & Living Center, Inc., d/b/a Collins Health Care</u>, No. 02-33575 (Bankr. W.D. Penn. March 8, 2002). Upon subsequent review of the mortgage filings the trustee discovered that the filing referred only to the borrower's real property. <u>Id.</u> On May 9, 2002, LaSalle notified Capco of the defective filing and of its claim of breach of warranty. Pl. Statement of Uncontroverted Facts, ¶ 34. Capco, upon learning that they were in breach of their warranties, was obliged either to cure any defect or to repurchase the mortgage at a price set by the agreement. PSA § 2.03(a). In response to LaSalle's notice of claim, Capco tendered a check for $25,000, which they claimed would cure the breach. <u>Id.</u> ¶ 37. LaSalle rejected the payment, which they considered an inadequate offer to settle their claim. Capco never repurchased the borrower's mortgage, despite the trustee's insistence.

---

[5] Capco also warranted that "[a]ll of the representations and warranties [provided] . . . in the Mortgage Loan Purchase and Sale Agreement ("MLPA") were true and correct as of the Cut-Off Date." <u>See id.</u> (quoting PSA § 2.03(b)(v)).

**DISCUSSION**

On December 16, 2002, LaSalle filed a complaint, alleging that Capco's breach of warranty had caused them substantial injury. Compl. ¶ 38. Capco denied breaching any warranties. Answer ¶ 6. In the alternative, Capco claimed that since the value of LaSalle's damages is so low, their breach was not material. Id. Additionally, Capco argued that LaSalle had been in breach of the warranty to notify Capco of any defective mortgage filings, both before and after the closing date. Although Capco argued that they plead their affirmative defenses in their answer, they requested leave to amend their pleading in the event that the court finds otherwise. Def. Notice of Mot. ¶ 1.

*A.     Capco's Motion for Leave to Amend Their Answer*

Without receiving court permission to amend their answer, any defenses not previously raised will be deemed waived, since the "failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." United States ex. rel. Maritime Admin. v. Continental Illinois Nat'l Bank & Trust Co., 889 F.2d 1248, 1253 (2d Cir. 1989) (citations and internal quotations omitted).

Rule 15(a), F.R. Civ. P. states that in most circumstances, "leave to amend should be freely given." However, in this case the lenient standard of Rule 15(a) F.R. Civ. P. must be balanced against the rule that a scheduling order "shall not be modified except upon a showing of good cause."[6] Rule 16(b), F.R. Civ. P. Capco has offered no excuse for their failure to raise these newly alleged affirmative defenses in their original answer, despite being given an extension of the filing date. Stipulation and Order, January 8, 2003. They have fallen well short of the showing of good cause warranting modification of the court's scheduling orders. See Groshowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003).

---

[6] The court entered such an order in the instant case. Scheduling Order, April 29, 2003, ¶ 2(d).

Furthermore, if the court granted Capco's request for leave to amend their answer, the interests of justice would clearly require allowing LaSalle to conduct further discovery related to the newly plead defenses. This would cause substantial delay and impair judicial efficiency. Additionally, reopening discovery at this stage would cause prejudice to LaSalle —beyond mere delay— since the costs of reopening discovery would be substantial. Accordingly, Capco's request is denied.

B.  *Capco's Motion for Summary Judgment*

Section 2.03 of the PSA is entitled "Representations, Warranties and Covenants." It contains a provision that requires Capco, in the event that they breach the agreement, either to cure the breach or to repurchase the mortgage at a specified price. Capco argues that because LaSalle had not performed their obligations, they were relieved of their duty to perform, and thus did not breach any of their warranties. If LaSalle did not comply with the requirements of these two subsections, their claim fails, since their substantial performance of their obligations is an implied element of their cause of action against Capco.

The essence of Capco's argument is that there can be no material dispute that LaSalle was in breach of two warranties they provided to give notice of the faulty filing. The duties that LaSalle allegedly did not perform are found within two subsections of the PSA. Capco claims that LaSalle failed to give them notice of the deficiency of the filing upon initial inspection of the mortgage file in 1999 (in violation of PSA § 2.02), and in 2002 (in violation of PSA § 2.03.) The meaning and interpretation of the notice provisions of the PSA is crucial to the question of whether LaSalle breached these warranties.[7]

---

[7] The court must determine whether the notice provisions of the PSA are unambiguous, and if so, whether a reasonable person could conclude that LaSalle gave the defendants the timely notice that is allegedly a condition precedent for Capco's duty to cure the defect or to repurchase the mortgage. See Mellon Bank, N.A. v. United Bank Corp., 31 F.3d 113, 115 (2d Cir. 1994); Sayers v. Rochester Tel. Corp., 7 F.3d 1091, 1094 (2d Cir. 1993) (holding that whether a contractual term is unambiguous is a matter of law); Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir.1992) (holding that extrinsic evidence of the meaning of unambiguous terms is barred.)

1. The Trustee's Duty to Provide Notice Section 2.02 of the PSA

Section 2.02 of the PSA outlines the inspection procedure for the mortgage filings provided by the seller. It imposes a duty on the plaintiff, who "agrees to ascertain that all documents . . . have been received, have been executed [and] appear to be what they purport to be . . . ." It is plain from the language of this section that the agreement merely requires the trustee to perform a cursory inventory of the mortgage filings. Furthermore, there is no clause in this section, on in any other provision of the PSA, that suggests that the duties of the seller will be suspended and the warranties contained in § 2.03(e) will be voided in the event that the trustee's inventory fails to discover that a document is not what it "purports to appear to be." PSA § 2.02. Rather, the trustee's discovery of a faulty filing in this initial inspection is merely a condition precedent for the performance of the seller's duty to request suitable documentation from the borrower.

This section of the agreement establishes a timetable for the inspection of the filings and allows for timely conclusion of the agreement in the event that the documents initially provided to the trustee do not conform to the PSA's requirements. This clearly indicates that the duty to inspect is related to the necessity of a swift closing date, and not intended to be a means of transferring to the trustee any liability for defective mortgage filings. Any defense to the breach of warranty claim based on the insufficiency of the trustee's initial inspection of the filings, even if plead in the defendants' answer, is meritless.[8]

2. The Trustee's Duty to Provide Notice Under Section 2.03 of the PSA

Capco also argues that LaSalle's purported failure to make "prompt notice" of claim after discovery of the filing's inadequacy is fatal to their claim of breach of warranty. PSA § 2.03(e). LaSalle discovered the defective filing on or about March 8, 2002, approximately two months

---
[8] The courts finds that this defense was unplead in the answer, but disposes of this argument on its merits.

before providing Capco with notice of their claim.[9] However, LaSalle need not have filed a claim immediately upon receiving notice of facts merely suggesting that Capco was in breach. See American Mfg. Co. v. U.S. Shipping Board, 7 F.2d 565, 566 (2d Cir. 1925). Rather, upon receipt of such notice, LaSalle was required only "to pick up the scent and nose to the source. If the quest confirms this suspicion, then he must make [the] decision [to raise the claim] with reasonable dispatch." See e.g. Banque Arabe et Internationale d'Investissement v. Maryland Nat'l Bank, 850 F.Supp. 1199, 1211 (S.D.N.Y. 1994) (Ward, J.) (emphasis added), aff'd, 57 F.3d 146 (2nd Cir. 1995).

Furthermore, upon learning that the filing was defective it was reasonable for LaSalle to spend time investigating whether the defect would cause them injury, and whether providing a defective filing was a breach of the PSA. Capco has not provided any evidence that Lasalle did not pursue these inquiries with reasonable dispatch after discovering the defective filing. Due to the undoubtedly complex legal issues related to the importance of the filing in the pending bankruptcy proceeding, determining whether legal injury had occurred over the course of two months was reasonable. See LaSalle Bank v. Lehman Bros., 237 F. Supp.2d 618, 637 (D. Md. 2002) (reasoning that under the terms of a nearly identical PSA and MLPA, a two-month period between discovery of breach and notice to the defendant did not constitute unreasonable delay.)

Because Capco has failed to demonstrate that the trustee did not perform its obligations to provide notice, and because the other arguments for summary judgment in their favor are wholly without merit, their motion for summary judgment is denied.

---

[9] Even if not made aware at that time, LaSalle arguably should have been cognizant of the deficiency through the exercise of due diligence as of that date.

B.  *LaSalle's Motion for Summary Judgment*

1. Standard of Review and Elements of the Cause of Action

We may award summary judgment for the plaintiff if it has submitted proof that establishes all the elements of breach of warranty as a matter of law. "Under New York common law, upon showing that: (1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) the warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant, plaintiff is entitled to be indemnified for any damages incurred as a result of such breach." Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (Conner, J.).

2. Discussion

The parties do not dispute that they had entered into a valid contract containing an express warranty. Accordingly, the court need only determine whether the trustee has demonstrated that the warranty to provide mortgage documents establishing a security interest in the borrower's personal property was material to the agreement, part of the basis of the bargain between the trustee and the seller, and whether the seller breached that express warranty. Id. Conversely, if the seller has shown with evidence that there is a material dispute of fact about any of these elements the court must deny the trustee's motion for summary judgment.

a. Materiality of the seller's breach

Capco alleges that any breach of the agreement was not material, owing to the low monetary value of any security interest in the personal property, and the relative unimportance of

the filing to the transaction creating the REMIC trust.[10] However, LaSalle has presented competent and uncontradicted evidence establishing the importance of security interests in the personal property used to operate a nursing home to those purchasing mortgages on these facilities. These security interests are vital to the buyer, since if they are not perfected the facility can never be sold as a going concern. See e.g. Greenspan Dep. at 62:3-10, & Nealon Aff. ¶14. The trustee provided evidence that when priced as a going concern, the value of the mortgaged facility was four million dollars, while the (hypothetically underapreciated) value of the real property subject to the mortgage was approximately half a million dollars less. Id. LaSalle demonstrated that the breach of warranty left them unable to recover the full value of what they had bargained for during the bankruptcy proceedings. This fact establishes that the breach of warranty was material.[11]

  b.  An express warranty forming part of the basis for the bargain

Under New York law, if the warranty at issue is material to the agreement, a party need not prove that it had actually relied on that warranty when entering into the transaction. See CPC Int'l Inc. v. McKesson Corp., 134 Misc. 2d 834, 513 N.Y.S.2d 319, 323 (Sup. Ct. 1987) ("This court declines to require a finding of reliance to permit recovery for breach of the warranties in the contract."); see also CBS Inc. v. Ziff-Davis Publ'g, 75 N.Y.2d 496, 553 N.E.2d 997, 1001, 554 N.Y.S.2d 449 (N.Y. 1990) (affirming the CPC court's "view of 'reliance' . . . as requiring no more than reliance on the express warranty as being a part of the bargain between the parties").

---

[10] Whether or not a breach was material is a mixed question of law and fact, which a court can decide if reasonable minds could not differ. See TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 450, 48 L. Ed. 2d 757, 96 S. Ct. 2126 (1976).

[11] The importance of the representations made within § 2.03 to the agreement as a whole is not determinative. See Resolution Trust Corp. v. Key Financial Services, 280 F.3d 12, 17 (1st Cir. 2002) (hereinafter RTC).

Furthermore, since LaSalle has presented substantial evidence that REMIC trustees rely on the warranty of obtaining a security interest in the personal property of a health care facility when purchasing such a mortgage, they have also established that this warranty formed part of the basis for the agreement with Capco.

      c.      Capco's subsequent attempt to cure the breach

Capco argues in the alternative that even if they were in breach, they should not be held liable for their failure to repurchase the mortgage. Capco asserts that by tendering a check for $25,000, they complied with the provisions of the PSA requiring them either to cure the breach or to repurchase the mortgage. However, Capco's position on how a breach might be cured is inconsistent with the agreement as a whole. The parties clearly intended the term "cure" as used in the PSA to mean only the replacement of a defective filing, since any other meaning would not be consistent with the repurchase clause. This clause provides for liquidated damages in the event that a breach cannot be cured. It is necessary because damages in cases such as this one would be exceptionally difficult to calculate.[12]

The contract clearly states that a cure must remedy the damages "in all material respects." MLPA §3(b), incorporated by reference into PSA § 2.03(e). Before the borrower's bankruptcy, the defective filing could be cured by being replaced. However, a cash payment tendered after the borrower's bankruptcy could not put the trustee in the same position as if the breach had not occurred.[13] Since the option of cure was no longer available, the only way for the seller to meet

---

[12] The repurchase clause subjects the seller to the risk of paying more than the trustee's actual damages. Since the parties agreed to this provision, shifting the risk of loss in this manner is acceptable. See RTC, 208 F.3d at 12.

[13] Substantial academic authority supports the position that where the amount of damages caused by the breach of a customary warranty provided by a mortgage seller cannot be adequately calculated, the breach cannot be cured by a cash payment; repurchase of the mortgage is required. See e.g. JAMES M. PEASLEE & DAVID Z. NIRENBERG, FEDERAL INCOME TAXATION OF MORTGAGE BACKED SECURITIES 124–25 (1994); Cf. U.C.C. 2-508.

its obligations under the PSA was to repurchase the mortgage. Allowing a party to "cure" by tendering a cash payment when the parties provided for liquidated damages in this event is contrary to the parties' manifested intentions.

Capco did not create a genuine issue of material fact on this element of the cause of action.[14] The parties agreed to a method of calculating the repurchase price. PSA, §1.01. By awarding damages in the amount that Capco agreed to pay in the event of breach, the court will make LaSalle whole. See RTC, 280 F.3d at 18 & n.15.

### 3. LaSalle's Damages Include Attorney's Fees as an Expense of Enforcement

The terms of the agreement between the trustee and the seller allow for the recovery of "any expenses arising out of the enforcement of the repurchase obligation." PSA § 1.01. Despite the fact that this case was clearly brought in order to enforce the contractual provision requiring repurchase of the mortgage (Compl., Prayer for Relief), Capco argues that these expenses do not include attorney's fees. However, this court has authorized the recovery of attorney's fees when the contracts at issue specified the recovery of collection expenses. U.S. ex rel. Casa Redimix Concrete Corp. v. Luvin Const. Corp., No. 00-CV-7552, 2001 WL 506227 at *4 (S.D.N.Y. May 14, 2001) (Baer, J.) (holding that "[a]lthough the scope of 'collection expenses' is somewhat ambiguous, given that litigation is a frequent and foreseeable means of collection, the natural reading of the term encompasses attorneys' fees incurred in a collection lawsuit . . . .") (emphasis added).

---

[14] Capco raised additional defenses to LaSalle's claim, including the court's purported lack of subject matter jurisdiction, and the plaintiff's lacks standing to bring the action. These defenses, some of which were not even discussed in Capco's memorandum of law, are wholly without merit. See LaSalle v. Lehman Bros., 237 F. Supp. 2d 465, 633 (S.D.N.Y. 2001) (Buchwald, J.) (holding that trustee has standing to bring suit against the mortgage seller by and through the special servicer), aff'd in part, vacated in part and remanded on other grounds, No. 04-5488, 2005 U.S. App. LEXIS 19775 (2d Cir. Sep. 14, 2005) Ocean Ships Inc. v. Stiles, 315 F.3d 111, 115 (2d Cir. 2002) (discussing the legal certainty test for cases brought pursuant to 28 U.S.C. § 1332).

The same reasoning applies to the interpretation of the phrase "expenses . . . of enforcement," since the enforcement of a contract similarly often requires litigation. Unlike in cases where the contractual provision merely contemplated recovery of "costs and expenses," here the expenses mentioned are explicitly connected to the possibility of litigation, and are therefore a clear indication that the parties contemplated the recovery of attorney's fees in a suit to enforce the agreement. Cf. Hooper Assoc. Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 367 (1989). Furthermore, this court has construed a similar term to the one at issue that referred to "all collection and enforcement costs" so as to include attorney's fees. See e.g. Mun. Capital Appreciation Partners I, L.P. v. Page, No. Civ-00-8138, 2002 WL 483510, *9 (S.D.N.Y. March 19, 2002) (McMahon, J.).

CONCLUSION

For the reasons set forth above, the court hereby grants LaSalle's motion for summary judgment. The court finds that the applicable damages should be calculated according to the repurchase clause found section 1.01 of the PSA, which includes the recovery of attorney's fees. Capco's motion for summary judgment and for leave to amend the answer is denied.

**IT IS SO ORDERED**

Dated: New York, New York

November 10, 2005

_____
ROBERT L. CARTER
U.S.D.J.

COPIES MAILED